**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **DELIS PIERRE** | **CIVIL ACTION** |
| **VERSUS** | **NO. 15-5252** |
| **N. BURL CAIN** | **SECTION "E"(4)** |

# REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**. Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. ***See* 28 U.S.C. § 2254(e)(2) (2006)**.[1]

## I. Factual and Procedural Background

The petitioner, Delis Pierre ("Pierre"), is a convicted inmate incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2] On January 13, 2011, Pierre charge by Bill of Information in Tangipahoa Parish with two counts of armed robbery, one count of second degree kidnapping, and one count of purse snatching.[3] The State eventually severed the first count of armed robbery without objection.[4]

The record reflects that, before sunrise on October 10, 2010, Angela Sampere Gomez exited a friend's apartment in Hammond, Louisiana, and began walking to her vehicle that was

[1]Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2]Rec. Doc. Nos. 3, 39.

[3]St. Rec. Vol. 1 of 7, Bill of Information, 1/13/11.

[4]St. Rec. Vol. 1 of 7, Trial Transcript, p. 7, 7/19/11.

parked on Oak Street about a block from the apartment.[5] As she walked along Thomas Street, a white pickup truck approached her. The driver, a man she did not know and who was later identified as Pierre, leaned out of the window and asked her if the bars were still open. Noting that it was clearly past 2:00 a.m., Gomez responded negatively and kept walking. Pierre then asked Gomez, "Is this Hammond?" After Gomez responded positively, Pierre put the truck in park and stumbled out of the truck to grab Gomez. A physical struggle ensued. As she fought with Pierre, Gomez began screaming. She fell backwards onto the ground, and Pierre, who was standing over her, grabbed her purse and left in his truck. Pierre's flip-flop sandals came off during the attack, and he left them at the scene. Gomez alerted bystanders at a nearby store of the attack, and the police were called.

Gomez provided a statement including a description of the perpetrator. The police seized the sandals that were left at the scene. A DNA sample was taken from the sandals and was determined to be that of Pierre, and this later was stipulated to at trial. About two weeks after the attack, the police showed Gomez a photographic lineup and she was unable to identify her attacker. Gomez later positively identified Pierre at trial.

On October 28, 2010, Milton Perilloux, an employee of a Hammond, Louisiana Wal-Mart store, exited the store at the end of his shift to walk home. A photograph from the store surveillance camera showed the time to be 11:09 p.m. As Perilloux entered a Wendy's restaurant parking lot, he saw a white pickup truck pull into the lot. The driver, later identified as Pierre, rolled down his window and spoke to Perilloux about needing food. Pierre exited his truck and walked around it,

[5]The facts are taken from the published opinion of the Louisiana First Circuit Court of Appeal on direct appeal. *State v. Pierre*, 111 So.3d 64, 66-67 (La. App. 1st Cir. 2012); St. Rec. Vol. 6 of 7, 1st Cir. Opinion, 2012-KA-0125, pp. 2-5, 9/21/12.

leaving the driver's door open and still asking for assistance. As Perilloux turned around to point to a nearby church, Pierre grabbed Perilloux's sleeve, put a sharp object to his neck, and threatened to stab him if he did not give him money. Perilloux pleaded for his life, stating that he had a pregnant wife at home and that he didn't have any money. After Pierre threatened to kill him, Perilloux added that he did have credit cards. Pierre coerced Perilloux into his truck and drove to a nearby ATM machine. Perilloux tried to get out of the vehicle, but the passenger door was broken and would not open. Pierre demanded that Perilloux give him his ATM card and PIN. Pierre then took $200.00 from Perilloux's account, let Perilloux out of the vehicle, and drove away.

Perilloux called the police to report the incident. Surveillance photographs introduced during the trial showed that Pierre arrived at the ATM at 11:22 p.m., used the machine, and stepped out of his vehicle just before Perilloux got out of the truck. On November 1, 2010, Perilloux identified Pierre as the perpetrator from a photographic lineup.

During a recorded interview with the police, Pierre admitted taking Perilloux to an ATM machine and using Perilloux's ATM card to withdraw $200.00 from his account. However, Pierre claimed that Perilloux approached his truck as he sat in a parking lot smoking crack and asked to smoke with him. Pierre said that he allowed Perilloux to enter his truck, noting that he had to step out, and let Perilloux slide in from the driver's side, since the passenger door was broken. Pierre said that he and Perilloux sat in his truck talking and smoking for about thirty minutes. Pierre further claimed in the interview that Perilloux asked to go to the ATM machine and gave Pierre his card and PIN to take money from his account for the crack Pierre provided. Pierre further stated that he accidentally withdrew more money than Perilloux owed him, but Perilloux kept the extra money.

At trial, Gomez was able to positively identify Pierre as her attacker. During his trial testimony, Pierre admitted to stealing Gomez's purse, but denied physically attacking her. Instead, Pierre claimed that he picked up the purse after Gomez dropped it and, as she tried to run from him, she tripped and fell.

Pierre also admitted at trial that he stole money from Perilloux, because he was only supposed to take out $20.00. When Perilloux realized that he withdrew $200.00, Perilloux chased Pierre's truck out of the parking lot. Pierre repeatedly denied using a weapon. When Perilloux testified, he repeatedly denied knowing Pierre, ever smoking crack, or giving Pierre permission to withdraw money from his account.

Pierre was tried before a jury on July 19 and 20, 2011, and found guilty as charged of the armed robbery and second degree kidnapping of Perilloux and the Gomez purse snatching.[6] On September 7, 2011, the Trial Court denied Pierre's motions for a new trial and for post-verdict judgment of acquittal.[7] On October 17, 2011, the Court sentenced Pierre to concurrent terms of 99 years in prison at hard labor for armed robbery, 20 years in prison at hard labor for second degree kidnapping, and 20 years in prison at hard labor for purse snatching, with the first two sentences to be served without benefit of parole, probation, or suspension of sentence.[8] The Court also denied Pierre's motion to reconsider the sentences.[9]

---

[6]St. Rec. Vol. 1 of 7, Jury Verdict (Count 2), 7/20/11; Jury Verdict (Count 3), 7/20/11; Jury Verdict (Count 4), 7/20/11; Trial Transcript, 7/19/11; Trial Transcript, 7/20/11; St. Rec. Vol. 2 of 7, Trial Transcript (continued), 7/20/11; Trial Minutes, 7/19/11; Trial Minutes, 7/20/11.

[7]St. Rec. Vol. 1 of 7, Motion for New Trial, 9/6/11; Motion for Judgment of Acquittal, 9/6/11; St. Rec. Vol. 2 of 7, Hearing Minutes, 9/7/11.

[8]St. Rec. Vol. 1 of 7, Sentencing Transcript, 10/17/11; St. Rec. Vol. 2 of 7, Sentencing Minutes, 10/17/11.

[9]St. Rec. Vol. 1 of 7, Motion to Reconsider Sentence, 11/7/11; Trial Court Order, 11/10/11.

On direct appeal, Pierre's appointed counsel asserted two errors:[10] (1) the trial court erred when it denied the motion for mistrial based on introduction of other crimes evidence; and (2) he received ineffective assistance when his counsel failed to move to prevent the State from playing the taped police interview which mentioned an uncharged armed robbery and uncharged purse snatching. On September 12, 2012, the Louisiana First Circuit affirmed Pierre's convictions and sentences finding no merit in the claims.[11]

The Louisiana Supreme Court denied Pierre's related writ application without stated reasons on April 1, 2013.[12] Pierre's convictions and sentences were final 90 days later, on Monday, July 1, 2013,[13] because he did not file for review with the United States Supreme Court. *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for *certiorari* with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)); U.S. S. Ct. Rule 13(1).

Almost one year later, on June 26, 2014,[14] Pierre submitted to the state trial court an application for post-conviction relief asserting two grounds for relief: (1) he was denied effective assistance of trial counsel where counsel failed to seek recusal of the district attorney's office, failed to object to prosecutorial misconduct, and failed to request a continuance to investigate mitigating circumstances before sentencing; and (2) there was prosecutorial misconduct when the

[10]St. Rec. Vol. 6 of 7, Appeal Brief, 2012-KA-0125, 4/30/12.

[11]*Pierre*, 111 So.3d at 64; St. Rec. Vol. 6 of 7, 1st Cir. Opinion, 2012-KA-0125, 9/21/12.

[12]*State v. Pierre*, 110 So.3d 139 (La. 2013); St. Rec. Vol. 4 of 7, La. S. Ct. Order, 2012-KO-2227, 4/1/13; St. Rec. Vol. 6 of 7, La. S. Ct. Letter, 2012-KO-2227, 10/5/12.

[13]The last day of the filing period was Sunday, June 30, 2013, which left the last day to fall on the next business day, Monday, July 1, 2013. *See* La. Code Crim. P. art. 13; Fed. R. Civ. P. 6.

[14]St. Rec. Vol. 6 of 7, Application for Post-Conviction Relief, 7/1/14 (dated 6/26/14). The Court will address the dating of this document later in this Report.

prosecutor vouched for witness credibility, bolstered the witness credibility, and destroyed Pierre's credibility. On July 1, 2014, the state trial court denied the application as meritless.[15]

On November 3, 2014, the Louisiana First Circuit summarily denied Pierre's related writ application.[16] On October 9, 2015, the Louisiana Supreme Court denied Pierre's subsequent writ application without stated reasons.[17]

On May 23, 2016, Pierre submitted to the state trial court a second application for post-conviction relief asserting 20 grounds for relief presenting numerous alleged errors by the state trial court, his counsel, and the prosecutor.[18] The state trial court denied the application on August 30, 2016, as repetitive under La. Code Crim. P. art. 930.4 and untimely under La. Code Crim. P. art. 930.8.[19]

On January 10, 2017, the Louisiana First Circuit denied Pierre's related writ application also finding that the application was untimely under La. Code Crim. P. art. 930.8.[20] On May 25, 2018, the Louisiana Supreme Court denied Pierre's subsequent writ application finding that Pierre failed to show that recusal was required, exculpatory evidence was withheld, or he received ineffective assistance of counsel.[21] In addition, the Court held that the remaining claims were not

[15]St. Rec. Vol. 6 of 7, Trial Court Order, 7/1/14; Clerk's Letter, 7/2/14.

[16]*State v. Pierre*, No. 2014-KW-1196, 2014 WL 12570014, at *1 (La. App. 1st Cir. Nov. 3, 2014); St. Rec. Vol. 6 of 7, 1st Cir. Order, 2014-KW-1196, 11/3/14. On June 13, 2019, the Court's staff contacted the clerk of the Louisiana First Circuit and was advised that this writ application was timely filed by Pierre on August 14, 2014. *See* St. Rec. Vol. 6 of 7, Notice of Intent, 8/1/14; Trial Court Order, 8/4/14.

[17]*State ex rel. Pierre v. State*, 178 So.3d 998 (La. 2015); St. Rec. Vol. 4 of 7, La. S. Ct. Order, 2014-KH-2465, 10/9/15; St. Rec. Vol. 6 of 7, La. S. Ct. Letter, 2014-KH-2465, 11/22/14.

[18]St. Rec. Vol. 5 of 7, Application for Post-Conviction Relief, 6/2/16 (dated 5/23/16).

[19]St. Rec. Vol. 6 of 7, Trial Court Order, 8/30/16; St. Rec. Vol. 3 of 7, Clerk's Letter, 8/31/16.

[20]*State v. Pierre*, No. 2016-KW-1330, 2017 WL 105962, at *1 (La. App. 1st Cir. Jan. 10, 2017); St. Rec. Vol. 3 of 7, 1st Cir. Order, 2016-KW-1330, 1/10/17.

[21]*State ex rel. Pierre v. State*, 243 So.3d 562 (La. 2018); St. Rec. Vol. 3 of 7, La. S. Ct. Writ Application, 17-KH-385, 3/2/17 (dated 2/1/17); St. Rec. Vol. 5 of 7, La. S. Ct. Letter, 2017-KH-385, 3/7/17.

timely asserted on post-conviction review, citing La. Code Crim. P. art. 930.8 and *State ex rel. Glover v. State*, 660 So.2d 1189 (La. 1995).

## II. Federal Petition and Procedural History

On November 3, 2015, after correction of certain deficiencies, the clerk of this Court filed Pierre's federal petition for habeas corpus relief in which he asserted four grounds for relief:[22] (1) the Trial Court erred in denying the motion for mistrial based on the introduction of other crimes evidence; (2) he was denied effective assistance when counsel failed to object to other crimes evidence mentioned in his taped statement to police;(3) he was denied effective assistance when counsel failed to object to the district attorney's conflict, failed to object to prosecutorial misconduct through the mention of religious accountability, vouching for witnesses' credibility, discrediting the defendant, use of other crimes evidence, and failing to request a continuance to investigate mitigating evidence before sentencing; and (4) prosecutorial misconduct occurred when the prosecutor vouched for witness's credibility, bolstered witness's credibility and destroyed Pierre's credibility.

On December 23, 2015, the State filed a response asserting the defenses of untimeliness and failure to exhaust.[23] After filing a reply to the State's opposition, Pierre moved for leave to amend his petition to include additional claims that he claimed were not exhausted because of prior acts of ineffective assistance of counsel and for a stay to allow him to complete exhaustion.[24] The record was not clear at the time as to whether Pierre's federal petition was untimely as suggested

[22]Rec. Doc. No. 3.

[23]Rec. Doc. No. 10.

[24]Rec. Doc. Nos. 14, 15.

by the State. Out of an abundance of caution, the Court stayed the proceedings on April 11, 2016, to allow Pierre the opportunity to complete exhaustion on the newly asserted claims.[25]

On Pierre's motion and after an opposition response from the State, the Court reopened the matter on November 13, 2018, and granted Pierre's request to amend and supplement his petition to assert the following claims, which include his original claims, all of which are now pending before the Court:[26] (1) he was denied a fair trial when the state trial court denied the motion for mistrial based on the introduction of other crimes evidence; (2) he received ineffective assistance when counsel failed to take action to prevent the playing of his statement that mentioned uncharged offenses; (3) he was denied effective assistance when counsel (a) failed to request that the District Attorney's Office be recused, (b) failed to object to prosecutorial misconduct, and (c) failed to request a continuance to investigate mitigating factors for sentencing; (4)(A) prosecutorial misconduct occurred when the prosecutor raised religious accountability and destroyed Pierre's credibility; (4)(B) the state trial court denied him due process when he was brought to trial without being arraigned on the purse snatching charge; (5) the state trial court erred when it denied the motion to sever and for new trial; (6) the state trial court erred when it denied the motion to recuse the district attorney and committed perjury; (7) the state trial court erred when it allowed him to appear for trial in prison garb; (8) the state trial court erred when it allowed a biased juror to serve; (9) the state trial court erred when it failed *sua sponte* to examine the voluntariness of his inculpatory statement when trial counsel failed to object or move to suppress the statement; (10)

[25]Rec. Doc. No. 16.

[26]Rec. Doc. Nos. 17, 18, 21, 24, 25, 26. The Court has numbered the claims asserted based on the presentation order made by Pierre and accounting for duplicated numbers. The State's numbering is not relied upon as it fails to correlate with some of the numbers in Pierre's petition and references the motion to amend (Rec. Doc. No. 17) instead of the Amended Petition with which it was served (Rec. Doc. No. 26).

the state trial court erred by admitting other crimes evidence; (11) the state trial court failed to establish his competence and sanity; (12) the state trial court failed to admonish the jury and otherwise address prosecutorial misconduct; (13) the state trial court imposed an excessive sentence; (14) the State suppressed favorable evidence; (15) prosecutorial misconduct occurred when the State (a) knowingly introduced uncorrected false evidence, (b) elicited false testimony from witnesses, and (c) slandered petitioner's character and introduced other crimes evidence; (16)(A) the State failed to properly notice its intent to use other crimes evidence; (16)(B) counsel failed to withdraw when there was a clear conflict of interest; (17)(A) he was denied a fair trial when the state trial judge failed to recuse himself; (17)(B) counsel failed to conduct a reasonable investigation in preparation for trial; (18) he received ineffective assistance when counsel failed to investigate petitioner's mental health, competence, and the viability of an insanity defense; (19) he received ineffective assistance when counsel (a) failed to file for review of the denial of motions, (b) failed to present petitioner for trial in civilian clothes, (c) failed to object to the prosecutor's attack on petitioner's character, (d) manipulated petitioner into signing a stipulation, (e) waived petitioner's presence at sidebars during voir dire and accepted a bias juror, (f) failed to object to the lack of notice for other crimes evidence, (g) failed to move to suppress the video interview, (h) deceived petitioner about the evidence to convince him to accept a plea offer, (i) failed to review the motion for new trial and preserve issues for appeal, and (j) infringed on their confidentiality; and (20) he received ineffective assistance of appellate counsel for failing to include specific claims requested by petitioner.

On January 2, 2019, the State filed an opposition to Pierre's amended and supplemental petition asserting that the original federal petition was not timely filed, some of the supplemental

claims are not timely, and that more than half of the claims[27] now asserted are procedurally barred from federal habeas corpus review.[28] Pierre filed a reply to the State's opposition response asserting that his original petition was timely filed and that he had been diligent in his efforts to do so.[29] For the following reasons, the record demonstrates that Pierre's federal petition was not timely filed and should be dismissed for that reason.

## III. General Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[30] applies to Pierre's petition, which is deemed filed in this Court under the mailbox rule on October 16, 2015. Because Pierre challenges this as the filing date under the mailbox rule, the Court will address it further here.

The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting *pro se*. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 378 (5th

---

[27]Although the State's numbering is not consistent with that of the Court or Pierre's pleading, the state courts' rulings, including the Louisiana Supreme Court's 2018 post-conviction ruling, seem to reflect that the following claims as numbered in this Report are in procedural default and barred from federal habeas review: Claims No. 4A, 4B, 5, 7, 8, 9, 11, 12, 13, 15, and 16A. This would leave the following claims for the Court's substantive review: Claims No. 1, 2, 3, 6, 10, 14, 16B, 17A, 17B, 18, 19, and 20. However, because this Report recommends dismissal on limitations grounds, it is not necessary to further discuss the State's procedural bar defense.

[28]Rec. Doc. No. 32.

[29]Rec. Doc. No. 39.

[30]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996. *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)). The AEDPA, signed into law that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes are effective at the moment they are signed into law. *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995). In this case, the official stamp of the Louisiana State Penitentiary's Legal Programs Department reflects the petition and accompanying documents were received from Pierre by prison officials on October 16, 2015, for electronic mailing to a federal court.[31] The official stamp, and this Court's records, also reflect that the pleadings were emailed to and received by the clerk of court that same day.[32]

The official stamps appearing on Pierre's pleadings are considered by this Court to establish the date on which the pleadings were presented to prison officials. This court may sometimes presume an inmate's signature date to be the date of presentation when there is no other proof of when the pleadings were presented for mailing. However, when the pleadings bear an official stamp date from the prison, the official stamp acts as proof of the date of presentation and preempts the need to consider the inmate's signature date. *See*, *e.g.*, *Smith v. Cain*, No. 12-2014, 2014 WL 2898457, at *6 n.16 (E.D. La. Jun. 26, 2014); *see also*, *England v. Cain*, No. 15-0961, 2015 WL 5971196, at *4 n.33 (E.D. La. Oct. 14, 2015) (Order adopting attached Report and Recommendation). Here Pierre has provided only self-serving argument for the court to consider and accept a different, earlier presentation date. The Court is not persuaded that his signature date should prevail over the official prison date stamp, and for purposes of applying the mailbox rule, the Court is not convinced that Pierre's federal petition was presented to prison officials on a date earlier than October 16, 2015.

The threshold questions on habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in

---

[31]Rec. Doc. No. 1-1, p. 27 (original deficient pleading).

[32]*Id.*

state court; *i.e.*, the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State asserts that Pierre's petition was not timely filed under the AEDPA and that a great number of his claims are in procedural default. While the record supports both defenses, for the following reasons, the Court finds that Pierre's federal habeas petition was not timely filed and must be dismissed with prejudice for that reason.

## IV. **Statute of Limitations**

The AEDPA requires a petitioner to bring his § 2254 claim within one year of the date his conviction became final.[33] *Duncan v. Walker*, 533 U.S. 167, 176-80 (2001). As stated above, Pierre's conviction was final under federal law on July 1, 2013, which was 90 days after the Louisiana Supreme Court denied his post-appeal writ application. Pursuant to § 2244, Pierre had one year from that date, or until July 1, 2014, to timely file a federal application for habeas corpus relief which he did not do. Thus, literal application of the statute would bar Pierre's petition as of that date unless he is entitled to tolling as provided for under the AEDPA.

---

[33]The statute of limitations provision of the AEDPA provides for other triggers which do not apply here:

(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of-

A. the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

B. the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State actions;

C. the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

D. the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection. 28 U.S.C. § 2244(d).

**A. <u>Statutory Tolling</u>**

Section 2244(d)(2) provides that the time during which a properly filed application for state post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation. *See* 28 U.S.C. § 2244(d)(2). In order for a state post-conviction application to be considered "properly filed" within the meaning of § 2244(d)(2), the applicant must have complied with all of the State's procedural requirements, such as timeliness and place of filing. *Pace v. DiGuglielmo*, 544 U.S. 408, 413-14 (2005); *Williams v. Cain*, 217 F.3d 303, 306-08 & n.4 (5th Cir. 2000) (quoting *Smith v. Ward*, 209 F.3d 383, 384-85 (5th Cir. 2000)); *Villegas v. Johnson*, 184 F.3d 467, 468-69 (5th Cir. 1999), *reh'g denied*, 196 F.3d 1259 (5th Cir. 1999). For purposes of the AEDPA, a timeliness calculation in Louisiana requires the application of the prison mailbox rule to state pleadings. *Causey v. Cain*, 450 F.3d 601, 604-05 (5th Cir. 2006). The Court has applied this rule in presenting the procedural history recited above.

A matter is "pending" for § 2244(d)(2) purposes "as long as the ordinary state collateral review process is 'in continuance.'" *Carey v. Saffold*, 536 U.S. 214, 219-20 (2002); *Williams*, 217 F.3d at 310 (quoting *Bennett v. Artuz*, 199 F.3d 116, 120 (2d Cir. 1999)) (finding that a matter is "pending" for Section 2244(d)(2) purposes until further appellate review is unavailable under Louisiana's procedures.); *see also Melancon v. Kaylo*, 259 F.3d 401, 405 (5th Cir. 2001).

The phrase "other collateral review" in the statute refers to state court proceedings challenging the pertinent judgment subsequently challenged in the federal habeas petition. *Dillworth v. Johnson*, 215 F.3d 497, 501 (5th Cir. 2000) (finding that a state habeas petition challenging a prior conviction in one county was other collateral review even though filed as a challenge to a second conviction in a different county); *Nara v. Frank*, 264 F.3d 310, 316 (3d Cir.

2001), *overruled on other grounds by Carey*, 536 U.S. at 214 (finding that a motion to withdraw a guilty plea is "other collateral review"). A "pertinent judgment or claim" requires that the state filings for which tolling is sought must have challenged the same conviction being challenged in the federal habeas corpus petition and must have addressed the same substantive claims now being raised in the federal habeas corpus petition. *Godfrey v. Dretke*, 396 F.3d 681, 687-88 (5th Cir. 2005).

In Pierre's case, the AEDPA filing period began to run on July 2, 2013, the day after his convictions and sentences were final under federal law. The one-year AEDPA filing period continued to run from that date for 359 days, until June 26, 2014, when Pierre is deemed under the mailbox rule to have filed his first application for post-conviction relief to the state trial court.

With respect to this application, unlike his actual federal petition, Pierre requests that the Court ignore his signature date of June 23, 2014, and consider the pleading filed under the mailbox rule when it was taken from him by prison personnel on June 26, 2014.[34] Pierre provides an exhibit in which he indicates that June 26, 2014, was the date the pleading was "placed in the hands of L.S.P. Class. Ofcr."[35] The verification was signed by the "Ex-Officio Notary" prison official and indicates that the pleading was "sworn to and subscribed before" him on June 26, 2014 (despite Pierre's indication that he signed it previously on June 23, 2014). The official declaration is deemed credible. The Court also notes that Pierre has consistently and repeatedly relied on June 26, 2014, as the mailbox filing date of this state court pleading.[36]

---

[34]Rec. Doc. No. 39, pp. 4-6.

[35]Rec. Doc. No. 39-1, p. 1.

[36]*See, e.g.*, Rec. Doc. No. 3-1, p. 2; Rec. Doc. No. 3-2, pp. 2, 5; Rec. Doc. No. 26, pp. 3, 8; Rec. Doc. No. 39, p. 5.

Nevertheless, even without prompting by Pierre, the record demonstrates that June 26, 2014, was the filing date under the mailbox rule. As already reviewed, under the mailbox rule, the date on which the prisoner presents the pleading to prison officials acts as the date of filing and the official date provided by the prison will prevail. Thus, June 26, 2014, is deemed the date on which Pierre handed his pleading to the prison official for mailing to the state court.

The one-year AEDPA limitations period remained tolled from June 26, 2014, through October 9, 2015, when the Louisiana Supreme Court denied the related writ application. At that time, Pierre had six days remaining to meet the one-year AEDPA filing deadline. The time began to run again the next day, October 10, 2015, and did so for the remaining six days, until October 15, 2015, when it expired. Pierre had no properly filed state post-conviction or other collateral review pending in any court during that period.

Pierre contends, however, that he completed his federal petition on October 14, 2015, as indicated by the date he placed next to his signature and that date should be considered his filing date. He requests that, this time, the Court ignore the prison official's date stamp and go with his signature date. As already noted, the official stamp from the Legal Programs Department reflects that the federal pleading was received from Pierre by prison officials on October 16, 2015, the day after the AEDPA filing period expired. As discussed previously, when applying the prison mailbox rule, the prison's official stamp will prevail over any presumption that may sometimes be given to an inmate's signature date. The prison officials cannot date stamp a pleading until it is presented to them by the inmate.

For these reasons, Pierre's federal petition deemed filed on October 16, 2015, was filed after the AEDPA filing period expired on October 15, 2015. *See Lookingbill v. Cockrell*, 293 F.3d 256, 264 (5th Cir. 2002) (missing the AEDPA deadline by even one day renders a federal petition

untimely). Pierre's federal petition was not timely filed and should be dismissed with prejudice for that reason.

**B. No Equitable Tolling**

The post-AEDPA jurisprudence also provides for equitable tolling where rare or extraordinary circumstances may have prevented a diligent petitioner from timely pursuing federal habeas corpus. *Pace*, 544 U.S. at 419; *Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir. 1999), *cert. denied*, 531 U.S. 1164 (2001); *Cantu-Tzin v. Johnson*, 162 F.3d 295, 299 (5th Cir. 1998); *Davis v. Johnson*, 158 F.3d 806, 810-11 (5th Cir. 1998), *cert. denied*, 526 U.S. 1074 (1999). Equitable tolling is warranted only in situations where the petitioner was actively misled or is prevented in some extraordinary way from asserting his rights. *Pace*, 544 U.S. at 418-19; *see Cousin v. Lensing*, 310 F.3d 843, 848 (5th Cir. 2002).

Equitable tolling has only been extended under extraordinary circumstances outside the control of the petitioner. *See Holland v. Florida*, 560 U.S. 631, 652-53 (2010) (finding that equitable tolling was warranted where attorney was more than negligent when he failed to satisfy professional standards of care by ignoring the client's requests to timely file a federal petition and in failing to communicate with the client over a period of years in spite of the client's letters); *Hardy v. Quarterman*, 577 F.3d 596, 599-600 (5th Cir. 2009) (finding that equitable tolling was warranted where petitioner suffered a significant state-created delay when, for nearly one year, the state appeals court failed in its duty under Texas law to inform him that his state habeas petition had been denied, petitioner diligently pursued federal habeas relief, and he persistently inquired to the court.); *United States v. Wynn*, 292 F.3d 226, 230 (5th Cir. 2002) (finding that tolling was warranted when defendant was deceived by attorney into believing that a timely motion to vacate was filed); *Coleman*, 184 F.3d at 402 (quotation omitted) ("A garden variety claim of excusable

neglect does not support equitable tolling."); *Fisher*, 174 F.3d at 715 (finding that tolling is not justified during petitioner's 17-day stay in psychiatric ward, during which he was confined, medicated, separated from his glasses and thus rendered legally blind, and denied meaningful access to the courts); *Cantu-Tzin*, 162 F.3d at 300 (finding that State's alleged failure to appoint competent habeas counsel did not justify tolling); *Davis*, 158 F.3d at 808 n.2 (assuming without deciding that equitable tolling was warranted when federal district court three times extended the deadline to file habeas corpus petition beyond expiration of AEDPA grace period). Pierre has not presented, and the record does not demonstrate, any basis for extending the extraordinary remedy of equitable tolling to the § 2244(d) calculation.

Pierre's federal petition deemed filed on October 16, 2015, was not timely filed within the AEDPA one-year statute of limitations period. There is no excuse for Pierre's untimeliness, and the petition should be dismissed with prejudice as time-barred.[37]

[37]Pierre has asserted no excuse to avoid the expiration of the limitations period. He has not asserted his actual innocence and has brought no new, reliable evidence to meet the high burden set forth in *McQuiggin v. Perkins*, 569 U.S. 383 (2013). Furthermore, the United States Supreme Court's holdings in *Martinez v. Ryan*, 566 U.S. 1 (2012) and *Trevino v. Thaler*, 569 U.S. 413 (2013), do not provide a basis for review of Pierre's untimely filed federal petition or his ineffective assistance of trial counsel claims. In *Martinez*, the Court held that a state court imposed "'procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the [State's] initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.'" *Trevino*, 569 U.S. at 417 (quoting *Martinez*, 566 U.S. at 17) (emphasis added). The bar to review at issue here arises from Pierre's failure to meet the federal limitations deadline under the AEDPA. The *Martinez* and *Trevino* decisions do not address or provide an excuse for the untimely filing of a federal habeas petition. *See Arthur v. Thomas*, 739 F.3d 611, 631 (11th Cir. 2014) ("Thus, we also hold that the reasoning of the *Martinez* rule does not apply to AEDPA's limitations period in § 2254 cases or any potential tolling of that period."); *Smith v. Rogers*, No. 14-0482, 2014 WL 2972884, at * 1 (W.D. La. Jul. 2, 2014); *Falls v. Cain*, No. 13-5091, 2014 WL 2702380, at *3 (E.D. La. Jun. 13, 2014) (Order adopting Report). These cases also do not constitute new rules of constitutional law made retroactive on collateral review to start a new one-year filing period under the AEDPA. *See In re Paredes*, 587 F. App'x 805, 813 (5th Cir. 2014) (". . . the Supreme Court has not made either *Martinez* or *Trevino* retroactive to cases on collateral review, within the meaning of 28 U.S.C. § 2244."); *Adams v. Thaler*, 679 F.3d 312, 322 n.6 (5th Cir. 2012). Thus, neither *Martinez* nor *Trevino* provide Pierre relief from the untimeliness of his federal petition.

## V. Recommendation

For the foregoing reasons, it is **RECOMMENDED** that Delis Pierre's petition for issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DISMISSED WITH PREJUDICE** as time-barred.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Assoc.*, 79 F.3d 1415, 1430 (5th Cir. 1996).[38]

New Orleans, Louisiana, this 24th day of June, 2019.

**KAREN WELLS ROBY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

[38]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.